Good morning, Your Honor. John Whitesides, Angelo Kilday, and Kilduff for the defendants and appellants, Officer Frakes, Officer Dyke, and the City of Chico. The complaint presents alternative factual scenarios. The first and the one that pertained for the first two pleadings was that due to Mr. De Vincenzi inadvertently set himself on fire while trying to light a cigarette handcuffed. The second scenario and the one that the district court focused on was that Mr. De Vincenzi attempted suicide by self-immolation by using the lighter he had in his pocket, which a prior search by the arresting officers had failed to reveal. The plaintiffs are pursuing a 14th Amendment substantive due process violation. The defendants believe that because this was an arrest-related search, that the case should be governed by the Fourth Amendment, which does not confer a right to be searched, but rather a prohibition against certain kinds of searches. Well, isn't the theory that the officers were negligent in conducting the search, I don't think there's any challenge to the probable cause for the arrest. Is that right? That is correct. So the plaintiff's theory is that by virtue of either inadvertence or intentionally leaving the cigarette lighter in the plaintiff's pocket, that that was the substantive due process violation, knowing that he was intoxicated and had a history of mental illness. Yes, with one correction, Your Honor, and that is that the complaint only pled that the lighter was not discovered. The district court misinterpreted the complaint to say that maybe it was deliberately left there, but that is not what was pled. In the second scenario, the suicide scenario, the defendants believe that the district court should have proceeded further to the causation issue and found that there was no substantial risk of imminent harm because in those circumstances, being handcuffed and shackled inside a police van, the likelihood of serious harm, much less through self-immolation, was extremely remote and thus unforeseeable. However, the district court did not address the causation issue, did not apply a test of a substantial chance of imminent harm, and instead used a far lower standard of a risk of harm. If the court looks at the other Ninth Circuit cases that the sides have argued as being analogous or controlling, the plaintiff relies on Kahn, where the officers were found potentially liable, enough of an issue for trial, because they did not report to the jail a suicide attempt that occurred in their presence in the van during transport. The defendants rely on Simmons, where the nurse did not discover the gauze that the prisoner had hidden on his person and used to hang himself. We believe that factually Simmons is much closer because it involves a unknown object, whereas with Kahn, Judge Reinhart's opinion actually pointed out that the officers may have been trying to cover up the fact that the arrestee was not handcuffed and that that allowed the arrestee a chance to try to attempt suicide, which the officers did not report. Did I? Go ahead. No, go ahead. No, please. Counsel, in this case, was the detainee cuffed in the front or were his hands cuffed behind him? Do you know? The record doesn't reveal that at this stage in the case. All that we know from the pleadings is that he was handcuffed and shackled. Yeah. Well, let's turn our attention to the pleading. Paragraph 31 says simply that the officers knew of the danger of an attempt to injure himself, but consciously ignored plaintiff's cries for help. Now, focusing on that phrase, if we accept as true that allegation, that statement, why is that not in and of itself sufficient to survive Rule 12b, scrutiny? That's the second part of the case, Your Honor. That's the fire suppression claim versus the fire prevention claim. I understand. On the fire suppression claim, the defendants believe that there was no authority then in 2009 or now that imposes a constitutional duty to rescue an arrestee from self-created peril. So if the evidence were to show, not inconsistent with this allegation, that they essentially ignored his agony, without sounding callous, let him burn, he deserves it, whatever the case may be, you're suggesting that without an affirmative duty to rescue, the complaint should not go forward? That's exactly what the holding was by the Eighth Circuit in the Lamson case. But we're not bound by that. No, you're not. But in terms of clearly established law and qualified immunity, that was the factually closest case that existed at the time this occurred. So if this had been in a prison setting as opposed to the back of a police car, would your answer be the same? Whether or not there's a constitutional duty to rescue? Right. If he had set himself afire in a prison cell after being convicted of a crime, would your answer be the same? My answer would be the same with one factual caveat, and that is that the complaint does say he was rescued. So this is not a case where he was allowed to burn and die, as was so in Lansdown. He was rescued. The claim is that he wasn't rescued quickly enough, which sounds in negligence, not in a constitutional violation. But your argument is that so long as he's rescued, it doesn't matter how long the officers watch him aflame, as long as they ultimately rescue him before he dies? Is that your argument? That would be the argument, that no case at that point from any jurisdiction had found a constitutional duty to rescue from a self-created peril that the officers did not either bring about or exacerbate. So your position is, so I understand it, even though he was in their control, in their custody, under their protection, at least in terms of constitutional constraints, that once this incident occurred and he cried out for help, due process did not require the officers to take any action? Is that correct? That is correct. But that was also the holding of the Sixth Circuit in the case where the arrested man, after being handcuffed, jumped into the Ohio River, and the officers refused to go in after him and refused to allow any member of the public to save him. But that's a little different than medical treatment. Well, they didn't rescue him. It's the same thing. But there would have been some hazard, at least, to rescuing someone who had jumped into a river. But to no more so than rescuing someone who's in a fire. Not in a fire. It's not like he's in a burning building and they have to go into a burning building to get him. Well, they had to go into a vehicle where he was on fire. But that's the point. We're talking about a pleading here. You're dressing it up with various facts and various scenarios, comparing it with other cases dealt largely in summary judgment. Why is this man not entitled to go forward on that claim? Because the plaintiff has the burden of showing clearly established law, and that is supposed to be resolved as early in the case as possible. The Supreme Court has emphasized that over and over again, preferably on the pleadings. If possible, when possible. So these facts are proven by the plaintiff. Your view is there's no due process claim. That is the first layer of the defense. The second layer is, even if there is a violation, that there was no clearly established law that so told the officers as of 2009. Counsel, what about the allegation in the following paragraph 32, which alleges that the city had a custom or policy of failing to require officers to maintain observation of an arrestee under circumstances where the arrestee was unable to care for himself, intoxicated, mentally ill? As I read that paragraph, what it is essentially saying is this couldn't have happened or he couldn't have been burned this badly if an officer had been standing near the car keeping an eye on him. Well, I'm still not clear why they had to go to the police station instead of just taking him to the Butte County Jail, but I guess we'll have to await further proceedings if that's what we order to answer that question. Well, they were transferring him to a van to take him to the jail. So he was going directly to the jail. I understand that. I just don't understand why they wouldn't just drive him to the jail. That I couldn't answer, Your Honor. I understand. To answer your first question, we're not appealing the Monell claim except to the extent that it necessarily depends on the presence of a constitutional violation. I would, however, say that there are no facts pled that show that there was any policy. There's just that conclusion. Well, I guess the facts that are pled, I think from a fair reading of the complaint, is that when they drove the sedan into the sally port, leaving or moving him then into a police van, he was handcuffed, flex cuffed, and inside the van. And as alleged in the complaint, there was no one immediately nearby. The complaint doesn't say where the officers were distant or proximate. Okay. Do you want to save some time for review? I would. Thank you, Your Honor. All right. Let's hear from the plaintiff. Okay. Good morning, Your Honors. May it please the Court. Michelle Scheinman and Jack Vedder on behalf of Joseph DeVincenzi, Respondent. Your Honors, I'd like to address the issue specifically with regards to causation as well as the State-created danger. The other side of the court ---- Could you pull that microphone down a little, I think? That way we can hear you a little better. Is that better? Yeah. Okay. The officers argue that the danger was created by Mr. DeVincenzi. However, they also state that he was in possession of the lighter prior, he was suicidal prior, he was schizophrenic prior, and yet managed to not light himself on fire. And the contention is that ---- Managed to not light himself on fire? Correct. They claim that he created the danger, but at the same time they claim that he was in possession of everything that could have caused that harm prior to his ---- But he did light himself on fire. Correct. But only after ---- Go ahead. Yes, Your Honor. Only after he was shackled and then left completely unattended and unable to actually ask for help, unable to talk to his counselor with regards to his suicidal ideations, only after he was unable to reach out to family. There was nobody there to aid him. They knew how drunk he was. They knew that he had not been appropriately safeguarded against dangerous items. So, in fact, the State created the danger. Where do we find all that? I realize that that's what your theory is, but that's not as alleged in the complaint. You're drawing some inferences there that may or may not be fair from the allegations of the complaint. The allegations of the complaint state that Mr. DeVincenzi specifically made threats of suicide at the time of arrest, that he specifically told the officers that he was schizophrenic and bipolar and being treated for those maladies, that he was, during the drive from the field to the station, banging his head against the plexiglass, that he was kicking, that he was shouting. Well, that's why they cuffed and shackled his feet, right, because he was trying to kick the windows of the police car? Yes, Your Honor. And that particular action is not what is at issue. What is at issue is the totality of the confinement that he was under. So they shackled him, failed to remove a lighter, either consciously or unconsciously. The complaint specifically states that, states it in the alternative. The way that it is actually worded in the complaint is the officers either failed to locate or remove. And so it's the ---- That's not an allegation that they deliberately left it there. And the ---- That sounds more negligence. I understand, yes, Your Honor, except that the standard is not intent here. With deliberate indifference, it is according to the State Created Danger test. But how do you establish deliberate indifference if the officers just missed it? Well, Your Honor, it would not be deliberate indifference if the officers simply missed it and then appropriately had policies in place to safeguard his safety. If they were watching him appropriately, if they were appropriately guarding against self-harm with all the knowledge that they had, then we wouldn't be here today. Well, part of the ---- that's part of the procedure. They shackle him largely for his own protection, as well as protecting police property and so forth. They're aware that he's had issues. They know him. They shackle him. Could you explain to me at what point in the continuum do you ---- do we cross the constitutional line? I'm not quite sure I understand. We cross the constitutional line at the point where they do not have a policy in place, and they bring this individual to the station and then abandon him. They leave him in a position where he is unable to care for himself and unable to reach out to anybody to help him. Knowing. The policy goes to your Menil claim, doesn't it? Correct. But the officers were following and acting under that policy. So the officers' activities, when they left him in the van, in the Sally Port, they were no longer in the field. They were in the station. They were in a specific location, typically used to assess an individual's medical condition, typically used to search and remove items that might be dangerous. I'm sorry. Your allegation is that occurs in the Sally Port? The Sally Port, according to the Gibson holding, yes, Your Honor, that is one description given previously to a Sally Port, is that it is a place typically used to search and to make medical assessments. Where do you get that? I always thought a Sally Port was just a secure area at a jail or a police station, like a garage with gates on both ends where the car ---- the gate arises, the car comes in, the gate falls, and then when you're taking the arrestee out of the car into the building, there's no chance that he can escape because he's got nowhere to run. I'm ---- where do you get this conclusion that that's where they do a search of the arrestee? I thought that's what happens when they book him into the jail. Your Honor, that is according to the Gibson holding, and I do have it in a footnote in ---- What's the citation to Gibson? What's the ---- it's 290F31175. Is that the case you're talking about, Gibson v. County of Washoe? Correct. And it's on page 11 of our opening brief in footnote 6, where it says, A Sally Port has been described as the vestibule where incoming arrestees are searched and visually inspected for any obvious signs of sickness or injury requiring medical attention prior to booking. But that wasn't happening here. All they were doing was transferring him from one vehicle to another. So going back to my question, I assume when you use the word abandoned, they abandoned him. I assume that what you're essentially saying is that during the whatever few minutes it took to get him out of the car and into the van, all right, someone wasn't standing there watching him. No, Your Honor. He was left in the van, and there was no other personnel in the van with him. So it was the failure to have somebody to observe him. To have any method of observing him. As far as our knowledge is, he was not on a video camera, as the victim was at Vaughan. And that's where you cross the constitutional line. It's the totality of the conditions, Your Honor. So it's not one specific event. It's the fact that they were very well aware of the obvious danger of self-harm. They then shackled him and made him unable to care for himself and left him completely unattended in possession of this lighter, in possession of a dangerous item. And it's not specifically the failure to search. It's not specifically a lighter. It's not specifically abandoning him. It's according to the Lally test and according to the Kennedy test. It's the totality of the situation that has to be viewed. But I guess what's missing for me is an allegation of the complaint that it was done knowingly. I think you've got a heck of a complaint for negligence. But unless I misunderstand the purpose of the federal civil rights statute, it is not to find officers liable for constitutional violations based on negligence. You've got to have something more. And I'm having the same concern that my brother has here, and that is trying to figure out where you cross the line from a negligence case to a constitutional violation triggering a 1983 action. Your Honor, we can look at Munger and we can look at Wood, and in both those cases   the facts as being negligence. In Wood, they left a woman out in the street in the evening after arresting a drunk driver and impounding his car, and they failed to protect her in any way. And as she was walking home In a neighborhood that was known to be very dangerous Correct And she was essentially left to her own devices. And in Munger, they 86'd a guy from a bar in Montana in freezing weather with no coat and he froze to death. In both those cases, though, Your Honor, the woman accepted a ride. You can easily say that she was the cause. You can easily say that they were simply negligent. No, I'm focusing on the mens rea of the actor that you want to hold liable, the officers. And I'm trying to establish what they did intentionally to harm your client. Your Honor, the standard is not intent. It is less than intent. Well, deliberately indifferent. Deliberate indifference, yeah. Correct. It's still mens rea. That's correct. It's just a lesser form, but it's something more than negligence. And that helped me on that. That's where I'm struggling. Okay. The mens rea comes in at the moment that they learn that he is suicidal, imminently suicidal. He made a threat of self-harm just moments before, minutes before, you know, in this ride and at the time of arrest. And with that knowledge, according to Kahn, they're under a higher obligation. In Kahn, the Court said that it was obvious, obvious, that those officers had a responsibility to report that suicide threat or if they witnessed an attempt, and that they had to report it to those who they were going to deliver that inmate to care and custody. But they were still in the process of doing that. I mean, we're in the middle of a transport here, as I see it, because for whatever reason, they went to the police station en route to the county jail. Why they did that, I don't know. But that is actually a dispositive question, Your Honor, because What's dispositive? I mean, I guess you and I have a very different view of what happens in a Sally report. And as I read your complaint, what happened was he got transferred from the four-door sedan, maybe because they were afraid he was actually going to kick the window glass out of the car, into a police wagon where that was less likely to occur, and they handcuffed and shackled him so that it would make it very difficult for him to either do damage to the police property or to harm himself. So then, I guess we're back to where did they cross the line? By leaving him in the van without somebody either sitting in the van with him or standing right next to it? Is that where the line was crossed? That in connection with the fact that they left him in possession of unknown contents in his pocket. They either knew that he had the lighter or they simply failed to secure things. But how do we know that they knew? The officer, again, if you look at the officer's answer to the complaint, which I understand was not filed until after Judge Mueller's ruling, however, the officer himself states that he saw a lighter but did not retain it. Well, can we consider that on a Rule 12b6 motion to dismiss? The standard is that you can take into account the pleadings. So my understanding would be... At the time the district court ruled. Okay. And the answer was filed after the district court ruled. Is that right? That is correct, Your Honor. Okay. So the answer to my question is, no, we can't consider. So, again, I would state that it's not clear and to ask Mr. DiVincenzi to know what the officers knew or didn't know when they left him there is not a fair standard. They have much better knowledge of this, and based on that, this should really move forward to discovery. But he has to plead enough to get to discovery. That's the problem you have. Yes, Your Honor. The pleading standard for a civil rights case is not raised by Iqbal, according to this Court, and is substantially lower. There was a clearly established constitutional right to not have his medical needs, his serious medical needs, taken with deliberate indifference. And if that right is clearly established, then the burden shifts to the officers to prove that their actions were reasonable. And, Your Honor, where the line is crossed is in the Conn court, the court on numerous occasions said the officers had two options, deliver this known ill and suicidal individual to a hospital or deliver this known ill and suicidal individual to the care and custody of another. These officers did not do that. So the claim is, is that he was being transferred to a van for immediate transport to the jail. But, in fact, there was no driver in that van. And we have no understanding or knowledge that he was being observed. We have no knowledge that he was being monitored appropriately. And what we do know is that something the size of a lighter, which could have been a knife, which could have been drugs, it could have been many things that he would have harmed himself with, that he was left unattended for what is an unknown period of time, that the officers responded eventually, after he had severely burned himself, to his cries. That doesn't tell us what the policies, that doesn't tell us what the officers might have done if he didn't cry out. He just would have burned to death. Your Honors, the two things that it seems to be at issue is whether this rises above negligence in both a medical standing and in a State-created danger. And I would submit that the critical thing to look at is it's not one, it's not one item, it's not one action or inaction. It's, can the State take an individual that they know is suicidal, that they know is very ill, that they know is very intoxicated? So that does come into play. Well, isn't the standard under Iqbal and Twombly, have you pled sufficient allegations from which we may plausibly infer that the officers were deliberately indifferent to his serious medical need? Correct. And even the officers in their brief state that it's facially plausible that based on the special relationship alone, that this complaint is valid. They stated in their own brief. There are sufficient facts pled here that there was a special relationship, they had a duty to rescue him, and they actively ignored his cries for help. And he sustained burns over 30% of his body that was not a harm that should have occurred. Okay, anybody have any further questions? I think we have your argument well in hand and you delivered it with 19 seconds to spare. So let's allow your opponent his rebuttal time. Very quickly, Your Honor, I appreciate the court saying that it can't consider what's in the answer, because it was after the district court's decision. But I do want to correct a, I'm sure, an advertent misstatement of the record. What the answer says is that the first lighter was found and removed, but not seized. The second lighter- Let's not get into it. Yeah, no, but I just- Let's confine our argument to the facts as alleged in the complaint. Yeah. And I understand it to be that for whatever reason, either because they knew it was there and didn't see it as potentially harmful, or they just overlooked it in a pat down frisk, I guess at the scene where they arrested him before they put him in the car. He was left with the lighter in his pocket. The exact allegation is that they did not discover or remove the lighter. And Your Honor is correct, it would be our position that even if it was detected, it was an innocuous enough object that it did not constitute a weapon or evidence of a crime to be safely removed under Fourth Amendment principles. The other point that we'd like, I'd like to make is that the negligence scenario that has been painted for the court by the plaintiff's argument was considered by the 11th Circuit in the Gish case in far more egregious circumstances. There, they get to the station, the officer leaves the vehicle, he can't take the gun into the station, so he leaves it on the front door. He can't take the gun into the back seat, so he leaves it on the front seat. The arrestee's in the back seat, the plexiglass is in between, the officer doesn't know the plexiglass is unlocked. Prisoner opens up the plexiglass, gets the gun and shoots himself. And the court finds that there's no constitutional violation because he didn't know it was unlocked. That is the closest you're going to get to what we had here. Well, not precisely, because in this case, there is an allegation that once the officers became aware that he was, in fact, on fire, they deliberately ignored his cries for help. What case do you have that's close to that scenario? Well, other than the Lansdowne case from the Eighth Circuit and the case from the Sixth Circuit regarding the man who jumped into the Ohio River, there were no cases that I'm aware of that were factually similar to this prior to 2009. However, there are a number of authorities we did cite in our brief that state where there's an affirmative step at safeguarding, there cannot be deliberate indifference even if, in hindsight, the officers should have gone further. Here, there were affirmative steps taken to safeguard. He was shackled, he was handcuffed, and they did put out the fire. But there was an intervening event. He set himself on fire. Right, and they did put it out, which was an affirmative step. But according to the complaint, they had ignored his cries for help. And as a result, he sustained more serious injuries. It's a very different scenario. It is, and again, I go back to the fact that there's no case that says, in that situation, they had a duty to rescue him. But once they undertook the duty to rescue, were they deliberately indifferent by waiting until he was burned more seriously before they intervened? There's no such allegation, Your Honor. There's no allegation that once they started to respond to the fire that they then delayed further. Well, I see this as a different case than one where a decision was made not to intervene at all. I think those are the cases you're citing, the cases where the officers made a decision not to intervene at all. And in this case, they listened to the cries. And then he said they put the fire out, but his allegation is that if they had done it sooner, instead of being deliberately indifferent to his cries for help, he would not have sustained the degree of injury. That's no different than Lansdowne. They did put the fire out in Lansdowne, but it was after the guy was dead. Here, he was rescued and is still alive. That's an affirmative step that negates deliberate indifference. All right, I think we have your argument well in hand. It's a very difficult issue. We'll wrestle with it and get you an answer as soon as we can. Thank you, Your Honor. The case just argued is submitted.
judges: Dearie, Tallman, Rawlinson